UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

| | |
|---|---|
| LUCIANA BELL, | : Civil Action No.: **16-cv-06847** |
| | : |
| Plaintiff, | : |
| -against- | : **COMPLAINT** |
| | : |
| AMERICAN AIRLINES, INC., ERIK OLUND | : |
| individually and in his official capacity, TASHA BROWN | : **TRIAL DEMANDED BY** |
| individually and in her official capacity, | : **JURY** |
| Defendants. | : |

-------------------------------------------------------------------------X

Plaintiff, LUCIANA BELL, by her attorneys, THE ABOUSHI LAW FIRM, PLLC,

complaining of the Defendants, respectfully alleges, upon information and belief, as follows:

## NATURE OF THE ACTION

1. This is an action based on a claim of gender discrimination, sexual harassment and

   retaliation committed by Defendants: (i) in violation of Title VII of the Civil Rights Act

   of 1964, 42 U.S.C. § 2000e, *et seq.,* as amended by, among others, the Civil Rights Act of

   1991 ("Title VII"); and (ii) 42 U.S.C. §1981 and (iii) in violation of the New York State

   Human Rights Law, NY Exec. Law, § 290 *et seq.* ("NYS HRL"); and (iv) in violation of

   the New York City Human Rights Law, NYC Admin. Code § 8-107 et *seq.* ("NYC

   HRL") seeking to recover lost wages, damages for emotional distress, punitive damages,

   reasonable attorney's fees and costs as a result of being harassed and discriminated

   against solely on the basis of her age and race and terminated in retaliation for opposing

   illegal harassment.

## JURISDICTION and VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. §1331 and under 42 U.S.C.

   §1983.

3. This Court has supplemental jurisdiction over claims under the laws of New York State and of the City of New York under 28 U.S.C. §1367.

4. Venue is proper in the Southern District of New York under 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in the Southern District.

5. On or about August 16, 2016, Plaintiff timely filed charges of discrimination and retaliation, as more fully described *infra*, with the Equal Employment Opportunity Commission ("EEOC").

6. On or about November 30, 2016, Plaintiff received a Notice of Right to Sue.

7. Plaintiff has fully complied with all the statutory and administrative prerequisites for the filing of this action.

## THE PARTIES

8. Plaintiff, Luciana Bell ("Bell"), is a resident of the City of New York and the State of New York.

9. Plaintiff is an "employee" as defined by the ADEA and Title VII.

10. During all relevant times of this Complaint, Plaintiff was a member of a protected class in that she was then Forty (40) years of age, pursuant to the ADEA.

11. Defendant AMERICAN AIRLINES, INC. is an air carrier engaged in the business of transporting passengers and is a foreign corporation authorized to do business in New York with a principle place of business at 4333 Amon Carter Boulevard, MD 5675, Fort Worth, TX 76155.

2

12. At all times herein relevant, Defendant Erik Olund, ("Olund") was employed as the Director of Customer Care for American Airlines Inc.

13. At all times herein relevant, Defendant Tasha Brown, ("Brown") was employed as the HR Representative for the Eastern Region of American Airlines Inc.

14. At all times relevant to this action, Defendant was the plaintiff's employer as defined by the ADEA and Title VII.

## STATEMENT OF FACTS

15. Luciana Bell was an employee of American Airlines who worked from February 24, 2015 to October 30, 2015 at their office located at John F. Kennedy International Airport Queens, New York 11430 Terminal 8.

16. Plaintiff was 40 years old at the time of her employment with Defendants and is African American.

17. Plaintiff was hired on January 21, 2015 for the position of Staff Assistant.

18. Plaintiff was one of three Issuing Officers. The other two Issuing Officers whom are also Agents/Trainers are Caucasian females, Elizabeth Cali-Schneider ("Schneider") and Stephanie Mele ("Mele"), who remain employed with Defendants.

19. Plaintiff's supervisor was Erik Olund ("Olund"), Director of Customer Care.

20. Defendants terminated Plaintiff on October 30, 2015 and Defendants hired a person outside the protected class namely, a Caucasian female who, upon information and belief, is 26 years old.

21. Plaintiff was subject to a hostile work environment, disparate treatment, adverse employment actions and fired in retaliation for raising complaints of the aforementioned unlawful treatment.

22. Defendants treated Plaintiff differently than at least two (2) similarly situated employees who held the same position as Plaintiff.

23. Schneider and Mele were to work with Plaintiff in submitting paperwork for new employees and present employees.

24. On July 2, 2015 Plaintiff asked Schneider to train her on the Customs Border Patrol audit, as she was required to do so.

25. Schneider refused to train Plaintiff stating she was busy. Upon making several requests to Schneider to train her, Plaintiff resorted to speaking with management to assign her someone else to train her. Schneider became angry and yelled at Plaintiff that what Plaintiff was doing was not important and anything she needed could wait until Schneider had time.

26. On July 25, 2015 Plaintiff received a phone call from an employee of Defendants informing Plaintiff that Schneider was speaking ill of Plaintiff to other employers and management. Specifically, Schneider defamed Plaintiff by stating to third parties that Plaintiff was too demanding and not capable because she had asked for training.

27. Schneider was heard complaining to Diane Barnaby ("Barnaby"), a manager, about Plaintiff being too old to learn new things and Barnaby directed Schneider to assist Plaintiff and train her as necessary.

28. Schneider argued with Barnaby and stated she did not want to train Plaintiff and she did not want to assist Plaintiff.

29. Plaintiff complained to Barnaby of Schneider's hostility towards her and Barnaby failed to investigate Plaintiff's complaint.

30. On August 13, 2015 Plaintiff was invited to an event by Liza Liriano ("Liriano"), an American Airlines Pencil Intern for the summer of 2015. Brice Fukumoto ("Fukumoto") and Liriano invited Plaintiff to the event. Plaintiff received permission from her supervisor, Olund, to attend the event. Plaintiff informed Lia Carollo ("Carollo"), the timekeeper, that she was leaving early at 3:00pm for the event.

31. Plaintiff was assured she would be paid for the time she was at the event. On August 14, 2015 Plaintiff texted Olund to confirm she would be paid for the time she attended the event. Olund told Plaintiff that the person who asked her to attend the event should make that determination.

32. On August 17, 2015 Plaintiff gave Carollo her timesheet with her adjusted time for having attended the event. Fukumoto had approved her hours for being at the event.

33. On August 28, 2015 Plaintiff's payment details showed an overpayment deduction for -$89.78. On the detail it stated the time Plaintiff was at the event and that she was not getting paid for that time. It stated "8/13 unpaid VTO voluntary time off and 3.95-overtime". Olund refused to pay Plaintiff for the time she was at the event because he said she did not deserve it.

34. On Monday, August 24, 2015 Plaintiff was out on an approved three-day sick leave due to an upper respiratory infection. Plaintiff returned to work on Thursday August 27, 2015 and had received a voicemail from an employee of Defendants about her Port Authority of New York and New Jersey Identification paperwork. Said employee was trying to renew her Port ID while Plaintiff was out but Schneider and Mele refused to assist her. The employee was told she must wait until Plaintiff returned from sick leave. This

information was incorrect and put Plaintiff in a position to appear as if she was not performing her work.

35. During the week of August 24, 2015, Plaintiff emailed Olund about coverage during her vacation that was approved for the following week (September 4 - 8, 2015). Plaintiff did not receive a response from Olund about the coverage. While on vacation, Plaintiff continued to receive emails from employees who needed their identification cards renewed but were told by Schneider that they must wait for Plaintiff to return from vacation.

36. On Wednesday September 9, 2015 Plaintiff returned from vacation. Plaintiff received a voicemail from another agent who was checking the status of her Port ID paperwork. Plaintiff returned the agents phone call who stated that after her fingerprints were done she came upstairs to check the status of her paperwork and Schneider refused to assist her.

37. Plaintiff assisted the agent and thereafter complained to Olund about Schneider's refusal to assist agents and employees with their IDs in her absence. Olund told Plaintiff he had too much other important things going on than to be dealing with this and remarked that she could not handle her assignments.

38. Another employee told Plaintiff she was interested in learning how to do Port IDs. Plaintiff asked Olund if that was something she could train the employee to do. Olund became upset with Plaintiff and berated Plaintiff that it was her job to do the Port IDs and Plaintiff needed to own up to it.

39. On Friday, September 25, 2015 Plaintiff met with Barnaby regarding the emails and voicemails she received from agents who were trying to renew their Port IDs while she

was away on vacation. Schneider told these agents that she was not responsible for processing their renewals and they must wait for Plaintiff.

40. Plaintiff explained to Barnaby how certain agents were upset that they were getting the runaround while trying to renew their Port IDs. The agents further told Plaintiff that Schneider spoke negatively about her in part stating that Plaintiff never did her work and was never at her desk. Plaintiff told Barnaby that on multiple occasions, Schneider slandered Plaintiff by telling agents she did not know what she was doing and that she was not doing her work.

41. Instead of investigating Plaintiff's complaint, Barnaby directed Plaintiff to report to Olund's office. On the same day,  Friday September 25, 2015, Olund met with Plaintiff and told her she was perceived as a bully. Plaintiff tried to explain to Olund that Schneider refused to help agents in her absence and slandered her to agents as well. Olund stated that he did not want to hear any more of what happened in the past. Olund refused to address Plaintiff's issues and instead told her "impression is everything".

42. Olund accused Plaintiff of being away from her desk too much. Olund then demanded Plaintiff put a sign on her desk when she would be away for more than five minutes. Olund publicly humiliated Plaintiff, as she was the only person in the department that had to use this sign.

43. Plaintiff explained to Olund that her job duties entailed her going to Customs Border Patrol CBP in terminal 4 to drop off customs new and renewal paperwork. That required Plaintiff to take the AirTrain from terminal 8 to terminal 4. Plaintiff was also required to go to LSOC (security) to get employees' pictures to go on the customs renewal forms. Plaintiff was also required to go to the AA Credit Union to have all new applications for

Port IDS notarized. Plaintiff was also required to go to the Port Authority to drop off new applications. This required Plaintiff to drive ten minutes each way. Olund still required her to use the aforementioned sign.

44. On Monday, September 28, 2015 Plaintiff asked to speak with Olund in regards to his treatment of her and his disregard of her complaints. Olund told Plaintiff he thought she was coming into his office to say that she learned from her mistake and she would not let it happened again. When Plaintiff tried to explain that she had not made a mistake and that she felt singled out in being required to use the sign, Olund rushed Plaintiff out of the office because he had "more important things to do".

45. On Friday, October 2, 2015 Olund hosted a town hall meeting with legacy US Airways employees to discuss PSS (reservations) crossover. That morning Plaintiff had received a phone call from Olund asking if she was at work. Plaintiff told him she was on the bridge at the Breast Cancer Awareness fundraiser. Plaintiff had also placed the sign on her desk stating her whereabouts.  Olund then berated Plaintiff for not being at the meeting because she was required to take notes.

46. Olund was condescending and offensive to Plaintiff although at no time was Plaintiff made aware that she was required to attend the meeting or that she was to take notes of any meetings.

47. Cheryl Henry, Manager of American Airlines Admiral Club gave Plaintiff permission to purchase food from the Admirals Club. All Staff Assistants and Management employees purchased food from the Admirals Club. There is no policy nor was Plaintiff ever apprised that she was not permitted to purchase food from the Admirals Club.

48. Plaintiff went with another employee to the Admirals Club to buy lunch. Upon purchasing food from the Admirals Club, Plaintiff and the employee returned to their respective cubicles to eat their food. Cheryl Henry came rushing to Plaintiff and told her that a manager must know when they purchase food from the Admirals Club.

49. On October 13, 2015 Olund was hosting his last legacy US Airways town hall meetings. At about 5:00pm Plaintiff told Olund she was going to grab something to eat before the meeting at 5:30pm. Olund told Plaintiff her attendance at the meeting was not required and she can go home.

50. On October 16, 2015 at 4:00pm Plaintiff was called in the office by Olund to speak with him and Tasha Brown ("Brown"), HR Representative for the Eastern Region. Over the next hour Olund claimed Plaintiff did not perform work required of her. Olund then addressed her purchasing food from the Admirals Club.

51. Olund stated that the Club was for members only and Plaintiff was not permitted to purchase food from there anymore, despite the fact that all other employees, including Olund, Ram and other management and Staff Assistants were permitted to do so.

52. When Plaintiff attempted to explain she did in fact receive permission to purchase food from there and that other employees were also purchasing food from the Club, Olund refused to let her speak, interrupted her and insisted Plaintiff "was not getting the point".

53. Next, Olund stated that there were two assignments that Plaintiff had not completed and one assignment was inaccurate. The first assignment was an emergency contact list. Plaintiff was told that Fukumoto's phone number was wrong on the list. Olund accused Plaintiff of copying and pasting contact information from an old list to the new list and that was why Fukumoto's number was incorrect. Plaintiff told Olund she did not do such

a thing and instead she retrieved the phone numbers from her phone or the master
manager's list. Olund condescendingly and dismissively told Plaintiff he had many
numbers in his phone he did not use.

54. Next, Olund stated Plaintiff did not do the Chit log he asked for. Plaintiff told Olund it
was done and was pending Ricky Ram's approval because he added another form to the
log. Olund became annoyed with Plaintiff's defense showing glaring inaccuracies in his
accusations.

55. Olund then accused Plaintiff of failing to take minutes from the legacy US Airways town
hall meeting of October 13, 2015. Plaintiff reminded Olund that he told her not to attend
that meeting. Olund told Plaintiff she was not here to "make a case" but to take direction
and correct herself.

56. Brown asked Plaintiff if there was anything she would like to add. Plaintiff raised her
issues again that she previously raised regarding a hostile work environment. Plaintiff
also raised complaints about disparate treatment in how as the only African American
Female, she was constantly singled out for things Schneider and Mele did on a routine
basis such as purchase food from the admiral club, leave their respective desks for more
than five minutes, and complete Port ID's as request came in- regardless of who was on
vacation.

57.  Brown and Olund disregarded Plaintiff's complaints and told her the meeting was not for
her to complain but for her to admit her mistakes and ask for direction. Olund demanded
that Plaintiff make a suggestion as to how she would correct herself. Stressed, humiliated,
overwhelmed and terrified at the ambush, Plaintiff asked that Olund give her deadlines

for assignments he issued to her. Olund scoffed and said he would not because she should do them quickly unless she was too slow to do her job further humiliating Plaintiff.

58. On Monday, October 19, 2015 Plaintiff reviewed her time sheets and found multiple discrepancies. Later that morning Plaintiff raised the issue of discrepancies in her time to Brown. Plaintiff was scheduled from 8:30am to 5:00pm on Mondays although Plaintiff worked 10:30am to 7:00pm on Mondays. Brown instructed Plaintiff to talk to Olund about correcting them. Plaintiff emailed Olund about the discrepancies. Plaintiff reiterated to Brown the issues Plaintiff was having since September 2015 while on vacation and agents were being told they had to wait until she came back before their paperwork can be done. Plaintiff told Brown that Olund was dismissive and condescending to her when she complained. Plaintiff told Brown she was disrespected and harassed by agents and nothing was ever done.

59. On October 20, 2015 Olund, Brown, Barnaby, Ann Miller, and Kevin from the Admiral Club had a meeting with one employee regarding their purchase of food from the Admirals Club. Thereafter, Brown and Olund met with another employee to discuss the same issue. The aforementioned persons also met with Plaintiff who had been purchasing food from the Admirals Club prior to Olund being hired by Defendants.

60. On two occasions Plaintiff requested to leave early for doctor appointments and Olund refused and instead required Plaintiff to take the entire day off and use her vacation days as opposed to her accrued sick leave.

61. On October 27, 2015 Plaintiff interviewed for a position in a different department. It was a promotion and Plaintiff was the only internal candidate who qualified. Plaintiff emailed Olund about her intention to apply and the date of her interview.

62. On October 30, 2015 Olund and Barnaby terminated Plaintiff stating she "had no business purchasing food in the Admirals Club" and accused Plaintiff of lying when she was questioned about purchasing food there.

63. A similarly situated employee, who is not African American, also purchased lunch from the Admirals Club with Plaintiff and was not terminated but rather she was given the option to be written up or she could resign. The employee chose to be written up and remained employed by American Airlines.

64. Upon being terminated, Defendants failed to apprise Plaintiff of the grievance process and the deadline to file any grievance. Instead, a former co-worker advised Plaintiff that such an option existed. Plaintiff immediately contacted Human Resources and was told she would receive a call back with instructions.

65. On November 4, 2015 Plaintiff still had not received a phone call from Human Resources regarding the grievance packet. Plaintiff emailed Brown inquiring as to the delay and Brown sent Plaintiff the Grievance Appeal process. Plaintiff asked for an extension to file her appeal because neither Brown nor HR apprised her of the process and HR refused. Plaintiff had 24 hours to file her appeal before her time had expired.

66. On November 5, 2015 Plaintiff emailed Brown to ask her if Plaintiff's peer witnesses would have to be anyone in particular. Brown advised Plaintiff that she could designate any peer of her choice.

67. On November 13, 2015 Plaintiff was scheduled for a hearing with Mike McKanna at John F. Kennedy Airport for November 18, 2015.

68. On November 18, 2015 Plaintiff's peer witness told her she could not testify on her behalf because she was told by Brown she could not. Although Plaintiff's appeal was

filed weeks before, she was only given notice of the rejection of her witness thirty minutes before her hearing.

69. Plaintiff addressed the discrepancies in her termination letter that included multiple contradictory allegations and flat out false statements about her.

70. A few weeks after her termination Plaintiff received a phone call from an employee stating that agents were spreading rumors that Plaintiff was terminated because Plaintiff was stealing agents' identities.

71. Defendants would not have discriminated against Plaintiff but for her race, color, national origin and age.

72. Defendants would not have terminated Plaintiff but for her complaint of disparate treatment.

73. Defendants' actions were intended to create a working environment that no reasonable person would tolerate.

74. Defendants' actions were intended to create a hostile working environment and did in fact create a hostile work environment for Plaintiff.

75. Plaintiff was subjected to ongoing discrimination on account of her race, color, national origin and age, was terminated on account of impermissible discrimination and in retaliation for complaining about the discrimination and hostile work environment; and was discriminated against.

76. Olund and Brown personally participated in the discriminatory conduct and occupied supervisory positions with the power over Plaintiff to do more than carry out personnel decisions made by others.

77. During the period of Plaintiff's employment, Defendants condoned and encouraged a

policy and practice of discriminating against and harassing plaintiff on the basis of her race, national origin, age and ; subjected Plaintiff to a hostile work environment; failed to provide Plaintiff with an adequate means of complaint and redress; and retaliated against Plaintiff.

78. As a result of the foregoing, Plaintiff has suffered, and continues to suffer, loss of income, extreme emotional distress, humiliation, damage to his reputation and career.

### AS AND FOR A FIRST CAUSE OF ACTION
### DISCRIMINATION AND RETALIATION UNDER TITLE VII

79. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

80. Defendants subjected Plaintiff to unlawful harassment, disparate treatment and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

81. Plaintiff, because of her race, and national origin, was denied terms and conditions of employment; was subject to a hostile environment; and was discharged by Defendants in violation of Title VII.

82. Plaintiff, because she complained of discrimination based on her race, and national origin, was subject to retaliation in that he was denied terms and conditions of employment; and was discharged by Defendants in violation of Title VII.

83. Individual Defendants, Olund and Brown, personally participated in the discrimination and retaliation; had the power to make personnel decisions; and aided and abetted the discrimination and retaliation in violation of the Title VII.

84. As a result of Defendants' willful, knowing and intentional discrimination and retaliation, Plaintiff sustained substantial losses in employment benefits and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

## AS AND FOR A SECOND CAUSE OF ACTION
## DISCRIMINATION AND RETALIATION UNDER THE ADEA

85. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

86. By reason of the foregoing, Plaintiff, because of her age, was denied terms and conditions of employment, was subject to a hostile environment, and was discharged by Defendants in violation of the ADEA.

87. Plaintiff, because she complained of discrimination based on her age, was subject to retaliation in that he was denied terms and conditions of employment; and was discharged by Defendants in violation of the ADEA.

88. Individual Defendants, Olund and Brown, personally participated in the discrimination and retaliation; had the power to make personnel decisions; and aided and abetted the discrimination and retaliation in violation of the ADEA.

89. As a result of Defendants' willful, knowing and intentional discrimination and retaliation, Plaintiff sustained substantial losses in employment benefits and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

## AS AND FOR A THIRD CAUSE OF ACTION
## DISCRIMINATION AND RETALIATION UNDER SECTION 1981

90. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

91. By reason of the foregoing, Plaintiff, because of her race and African American origin, was denied terms and conditions of employment, was subject to a hostile environment, and was discharged by Defendants in violation of Section 1981.

92. Plaintiff, because she complained of discrimination based on her race and ethnic origin, was subject to retaliation in that he was denied terms and conditions of employment; and was discharged by Defendants in violation of Section 1981.

93. Individual Defendants, Olund and Brown, personally participated in the discrimination and retaliation; had the power to make personnel decisions; and aided and abetted the discrimination and retaliation in violation of Section 1981.

94. As a result of defendants' willful, knowing and intentional discrimination and retaliation, Plaintiff sustained substantial losses in employment benefits and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**DISCRIMINATION AND RETALIATION UNDER EXECUTIVE LAW**
**ARTICLE 15 § 290 ET SEQ.**

95. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

96. By reason of the foregoing, Plaintiff, because of her race, color, national origin, and age was denied terms and conditions of employment, was subject to a hostile environment, and was discharged by defendants in violation of the Executive Law, Article 15, § 290 et seq.

97. Plaintiff, because she complained of discrimination based on her race, color, national origin, and age was denied terms and conditions of employment, was subject to

retaliation, was denied fair representation, and was discharged by defendants in violation

of the Executive Law, Article 15, § 290 et seq.

98. Individual Defendants, Olund and Brown, participated in the discrimination and

retaliation; had the power to make personnel decisions; and aided and abetted the

discrimination and retaliation in violation of Executive Law § 290 et seq.

99. As a result of Defendants' willful, knowing and intentional discrimination and

retaliation, Plaintiff sustained substantial losses in earnings and other employment

benefits, future pecuniary losses and has suffered and continues to suffer humiliation,

mental and physical distress and anguish

## AS AND FOR A FIFTH CAUSE OF ACTION
## DISCRMINATION AND RETALIATION UNDER
## THE NEW YORK CITY ADMINSITRATIVE CODE

100. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding

paragraphs as if fully set forth herein.

101. Defendants engaged in unlawful discrimination against Plaintiff on the basis of her age,

race and national origin, in violation of the NYC HRL, NYC Admin Code § 8-107 et.

seq. by subjecting Plaintiff to a hostile work environment, discriminating against her

with regards to the terms and conditions of her employment and by terminating her

employment.

102. By reason of the foregoing, Plaintiff, because of her race, color, national origin, and age

was denied terms and conditions of employment, was subject to a hostile environment,

and was discharged by defendants in violation of the NYC HRL, NYC Admin Code § 8-

107

103. Plaintiff, because she complained of discrimination based on her race, color, national origin, and age was denied terms and conditions of employment, was subject to retaliation and was discharged by Defendants in violation of the NYC HRL, NYC Admin Code § 8-107 et. seq.

104. Individual Defendants, Olund and Brown, participated in the discrimination and retaliation; had the power to make personnel decisions; and aided and abetted the discrimination and retaliation in violation of NYC HRL, NYC Admin Code § 8-107 et. seq.

105. As a result of Defendants' willful, knowing and intentional discrimination and retaliation, Plaintiff sustained substantial losses in earnings and other employment benefits, future pecuniary losses and has suffered and continues to suffer humiliation, mental and physical distress and anguish

## PRAYERS FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court issue a judgment, punitive damages, together with the attorneys' fees, interest, costs and disbursements of this action and

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York, and the City of New York;

B. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

C. An award of damages in an amount to be determined at trial, plus prejudgment

interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for his mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and physical injuries;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for harm to his professional and personal reputation and loss of career fulfillment;

E. An award of damages in an amount to be determined at trial to compensate Plaintiff for the defamation that Defendants committed against her;

F. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

G. An award of punitive damages;

H. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

I. Any other and further relief the Court deems just and proper.

Dated: New York, NY
          December 12, 2016

                              Respectfully Submitted,


                    By:      _____/s/_____
                             Tahanie A. Aboushi, Esq (TA-6529)